## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

GENERAL CASUALTY COMPANY
OF WISCONSIN, a Wisconsin Insurance
Corporation, and GENERAL CASUALTY
INSURANCE COMPANY, a Wisconsin
Insurance Corporation,

     *Plaintiffs*,

v.

BURKE ENGINEERING CORPORATION,
an Illinois corporation, and CHARLENE
EARLEY, as Special Administrator of the
Estate of Diana Defilippis, deceased,
VINCENT A. ABETE, as Special
Administrator of the Estate of Beverly Abete,
deceased, JEFFREY ADCOCK, as Special
Administrator of the Estate of Debra Adcock,
deceased, JENNIFER ARLEN, MELISSA
ARLEN, MICHAEL ARLEN, RONALD
ARLEN, LYNN AVERY, THOMAS J.
BADAL, SYLVIA BAKER, as Special
Administrator of [the Estate of] ELMER
BAKER, deceased, THERESA BARNES,
DEBORAH BAUER, JANET BELAK,
MICHAEL BELL SR., THEODORE BERCH,
DIANE BERRY, Individually and as Special
Administrator of [the Estate of] Jeffrey Berry,
deceased, RAY BIALEK, Individually and as
Special Administrator of the Estate of Donna
Bialek, deceased, KRISTIN BIEN, as Special
Administrator of the Estate of James Bien,
deceased, JENNIFER BITTNER, LAURA
BLAND, as Special Administrator of the
Estate of George Bland, deceased, JEFFREY
BLAND, DEBORAH BOETTCHER, MARY
BOLISENGA, as Special Administrator of the
Estate of Joseph Bolisenga, deceased,
CAROLYN BUONICONTI, HAROLD
BRADY, KATHLEEN BRENNAN, FRANK
CALDARIO, DAVID CAMPBELL,
KRISTINE TIGGELAAR, as Special
Administrator of the Estate of Donald

Case No. 1:15-cv-04138
Judge:
Magistrate Judge:

**GENERAL CASUALTY COMPANY
OF WISCONSIN
AND GENERAL CASUALTY
INSURANCE COMPANY'S
COMPLAINT FOR DECLARATORY
JUDGMENT**

Campbell, deceased, JOSEPH CAMPBELL, )
ROBERT CAMPBELL, SABINE )
CAMPBELL, RAYMOND CANTELO, )
RYAN CARTER, Individually and as Special )
Administrator of the Estate of Douglas )
Johnson, deceased, JOANNE CASEY, )
SUSAN L. KHATTAB, as Special )
Administrator of the Estates of Betty S. )
Cheffer, deceased, and Donald H. Cheffer, )
deceased, TANYA CHAINEY, ANGIE )
CHAPA, TONY CHAPA, KAREN CHAPUT, )
DIANE CIEZADLO, FRANK CIEZADLO, )
KEVIN CLARK, ROBERT CLARK, as )
Parent and Next Best Friend of Andrew Clark, )
a Minor, SHARON CONNOLLY, JOYCE )
CONSDOR[F], as Special Administrator of )
the Estate of John Consdorf, deceased, )
SHAWN CONWAY, RENATA CORLEY, )
KIMBERLY A. CRUCE, TIMOTHY AND )
LAURA DALEY, as Parents and Next Best )
Friends of KATHERINE ROSE DALY, a )
Minor, ANGELA DEA, JOHN DEL MURO, )
SOCORRO DEL MURO, KELLY DELUISE, )
VINCENT DELUISE, DENNIS DEVRIES, as )
Special Administrator of the Estate of )
Gwendolyn Devries, deceased, ROBERT )
DIBENEDETTO, SUSAN DIGUIDO, )
TERRY DIGUIDO, MICHELLE DOWNEY, )
GERALDINE POTTER, as Special )
Administrator of the Estates of Irene L. Doyle, )
deceased and William J. Doyle, deceased, )
ROBERT DUBIN, as Special Administrator of )
the Estate of Kristin Dubin, deceased, )
NORMA DUNCAN, ROBERT DUNLEAVY, )
MITCHELL DURLAK, as Special )
Administrator of the Estate of Nancy Durlak, )
deceased, DION DWYER, MARIA EGAN, )
SUSAN EZERSKI, as Special Administrator )
of [the Estate of] Florence Rachuck, deceased, )
ALLYSON FALLS, ANTHONY AND )
MONICA FIORENZO, as Parents and Next )
Best Friends of NICKOLAS FIORENZO, a )
Minor, ED FITZGIBBONS, GERALDINE )
FITZGIBBONS, DEBBIE FLANNIGAN, )
CONSTANCE FREDRICK, HARRY )
FREDIRCK, MARYLOU FREEMAN, )

DANIEL FRIBERG, PATRICIA KRAUSE, as Special Administrator of the Estate of Brooke Fry, deceased, EVERETT GALUSHA, as Special Administrator of the Estate of Mary Ann Galusha, deceased, ADRIAN GARIBAY, JANET GERVASIO, STANLEY GIERTUGA, DAVID GONZALEZ, PHILLIP GORECKI, KURT GREGORY, ANGELA GRIGOLA, SUSAN GRIGOLA, DIANE GUSTAFSON, as Special Administrator of the Estate of ELMER GUSTAFSON, deceased, ALEXANDER J.L. GUYETTE, DUANE HANACEK, SR., as Special Administrator of the Estate of Duane Hanacek, Jr., deceased, and as Special Representative of Bernice Hanacek, JOANNE HAASE, ROBERT HAASE, PAMELA HARVEY, MIKE HAUSER, as Special Administrator of the Estate of Scott Hauser, deceased, PAUL HERNANDEZ, TAMMY LAWSON-HERNANDEZ, MICHAEL HOULIHAN, BARBARA HULL, AUDREY ITHAL, GLENN ITHAL, JEFFREY ITHAL, NICOLE ITHAL, CLAUDIA JACKOWIAK, Individually and as Special Administrator of the Estate of Richard Jackowiak, deceased, RUBY JANES, DAVID JEROSKI, Individually and as Special Administrator of the Estates of Albert Jeroski, deceased, and Mary Jeroski, deceased, CHRISTINE JIMENEZ, LINDA JODY, Individually and as Special Administrator of the Estates of Robert Nielsen, deceased, and Karen Nielsen, deceased, MARGARET JOHNSON, PERRY JORDAN, Individually and as Special Administrator of the Estate of Ingeborg Jordan, deceased, CHRISTIE JOSZA, EILEEN JOSZA, Individually and as Parent and Next Best Friend of KAYLIN JOSZA, a Minor, JENNIFER JOSZA, KAREN KACZYNSKI, RONALD KACZYNSKI, DEREK KALCHBRENNER, ELLEN KAKOSKA, DAWN KINCAID, as Special Administrator of the Estate of Fred Schneider, deceased, BRENDA J. KILLIN, GARY KISSEL, as Special Administrator of the

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Estates of Kenneth Kissel, deceased, and
Marilyn Kissel, deceased, JUDY KLESKER,
as Special Administrator of the Estate of
Gloria Klesker, deceased, CHARLES KNOX,
RONALD        KOOIMA,        DELORES
KOPROWSKI, as Special Administrator of
the Estate of Anthony Koprowski, deceased,
MATTHEW FRY, BRIANNE FRY, BRUCE
KRYSTOF, as Special Administrator of [the
Estate of] Ed Krystof, deceased, BRIAN
KWASNY, as Special Administrator of [the
Estate of] DIANE KWASNY, deceased,
SUSANNE LANDINO, ROSE LAMANTIA,
as Special Administrator of [the Estates of]
Mary Lamantia, deceased, and Maurice
Lamantia, deceased, DEBBIE LARCHER,
BRADLEY LARSON, Individually and as
Special Administrator of the Estate of B. Jean
Larson,        deceased,        KATHLEEN
LEWANDOWSKI, as Special Administrator
of the Estate of Richard Lewandowski,
deceased, THOMAS LEAHY, BONITA
LOEFFEL,        WILLIAM        LOEFFEL,
Individually and as Special Administrator of
the Estate of Sandra Loeffel, deceased,
CHRISTINE LOTZ, as Mother and Next
Friend of Nicole Munoz, a Minor, PAUL
MUNOZ, BRIAN LUCITT, FREDRICK
LUNA, as Special Administrator of the Estate
of Emma Luna, deceased, KATHY LUDWIG-
HERNANDEZ, ELIZABETH ANN LYSICK,
DOUGLAS        MACLEAN,        as        Special
Administrator of the Estates of Barbara
MacLean, deceased, and Harry MacLean,
deceased, JACQUELINE MALDEN, JACOB
MAREK, DAVE MARSZALEK, VANESSA
MARTINEZ, DAVID MASON, as Special
Administrator of the Estate of Tricia Mason,
deceased, DAVID MATAKIEWICZ, JEFF
MATAKIEWICZ,        ASHA        MATHEW,
MARIAMMA        MATHEW,        MICHAEL
MASTERS,        ELIZABETH        TERESA
McDERMOTT, SANDRA McELLIGOTT,
Individually and as Special Administrator of
the Estate of Jane S. Kramer, deceased, JOHN
McGLYNN, AMY McGOOGAN, JOE

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

McGRATH, TYLER McMASTER, JACQUALYNN McNEAL, GREGORY MECH, SANDRA METZGER, as Parent and Next Best Friend of Sara Metzger, BRIAN MEYER, VALERIE MEZYDIO, CLAUDIA MILLER, GERALD MITCHELL, THOMAS MITCHELL, CHERYL GOLDBERG, as Special Administrator of the Estate of Maureen Mossman, deceased, PAUL MUNOZ, ROBERT M. MUDD, ERIC MUSILEK, ERNEST MUSILEK, KAREN MYSLIWIEC, as the Special Administrator of the Estate of Dennis Wika, deceased, JASON NIEMOTH, as Special Administrator of the Estate of Annette Niemoth, deceased, LAYNE NOVAK, TERRENCE O'NEILL, HARRIET O'NEILL, BETH DIVIRGILIO, as Parent and Next Best Friend of DAMEN O'SHEA, ROBERT O'TOOLE, KATHLEEN H. PARKER, SANDRA STEWART, as Special Administrator of the Estate of Sylvia Perry, deceased, CATHERINE PETERSON, ERIC PLYMAN, DENNIS POLAK, GARY PONDEL, NANCY S. POTTER, TAMI PRINCIPE, LISA PRZYBYLA, JENNIFER RADA, MICHAEL RAMPICK, KAREN REGAN, DAVID REINICHE, PATRICIA REINICHE, SANDY REINSTEIN, Individually and as Parent and Next Best Friend of Lawrence Reinstein, a Minor, TERESA RICE, RICHARD T. RODRIGUEZ, as Special Administrator of the Estate of Karen Rodriguez, deceased, DANIELLE S. PRUITT, as Special Administrator of the Estate of Martin K. Rodriguez, deceased, SABRINA RODRIGUEZ, NICHOLE ROSS, KARIE SCACCIA, as Parent and Next Best Friend of Anthony Scaccia, a Minor, DANIEL DIXON, as Special Administrator of the Estate of Fredrick Schmaedeke, deceased, LINDA SCHOBER, Individually and as Parent and Next Friend of Stephanie Schober and Matthew Schober, RYAN SCHOBER, GREG SEEBER, MORDENA SEPHUS, WESLEY SERAFIN, VINCENT SERAFINI, as Special Administrator of the Estate of Wayne Serafin,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

deceased, MICHAEL SEWERYNOW, )
KAREN SILVA, HOWARD SMITH, )
LARRY SNYDER, as Special Administrator )
of the Estate of Lillian Snyder, deceased, )
JOANN SOLTIS, LOUISE SOLNER, )
RICHARD SOLNER, LAWRENCE )
SPARKS, KIM GORZYCKI, as Special )
Administrator of the Estate of Carol Spiewak, )
deceased, ROSEMARY STASZEL, )
SHIRLEY STEPP, AMY STERN, )
ANTHONY STERN, KRISTIN STRONER, )
SUE STUDZINSKI, MARILYN SULLIVAN, )
RONALD SZWAJKOWSKI, as Special )
Administrator of the Estate of Sharyn )
Szwajkowski, deceased, AMY BOS, PAM )
TERRAZZINO, Individually and as Special )
Administrator of [the Estate of] Vince )
Terrazzino, deceased, ALEX TERZICH, )
DEBORAH TERZICH, SARA TERZICH, )
HOUSTON THOMAS, ALYSSA )
THOMPSON, WILLIAM THOMPSON, )
KRISTINA TIGGELAAR, Individually and as )
Special Administrator of the Estates of )
Michael Bowers, deceased, and John )
Tiggelaar, deceased, LINDA TOMCZUK, )
PAUL TON, SHELLY TORSAN, CURTIS )
HAILEY, JEFFREY JOHN TUTTLE, )
Individually and as Parent and Next Best )
Friend of Aubrey Lynn Tuttle, a Minor, and )
Brianne Marie Tuttle, a Minor, DIANE )
ULASICH, MARCY ULASICH, THOMAS )
ULASICH, CONSTANTINO VIVACQUA, )
ARTHUR WACHOLZ, JUDY WACHOLZ, )
KEVIN WALSH, as Special Administrator of )
the Estate of Patrick Walsh, deceased, )
THOMAS BERNARD WATTAM, )
ADRIANE WEYFORTH, ANNA )
WHITCOMB, SANDRA WHITE, as Special )
Administrator of the Estate of Robert White, )
deceased, TRACY WILKINSON, ANN )
WISE, Individually and as Parent and Next )
Best Friend of Willow Victoria Raine Wise, a )
Minor, BETH WOYTEK VIBERG, as Special )
Administrator of the Estate of Amanda )
Woytek, deceased, MICHELLE DOWNEY, )
as Special Administrator of the Estate of )

Brandi Young, deceased, KATHLEEN YOUNG, VALERIE YOUNG, MELISSA ZIRBEL, RITAS ZIUPSNYS, JUDY ALICIA, as Special Administrator of the Estate of Edwin Alicia, deceased, MERLINE ALLEN, THEO ALLEN, RAY ATTWOOD, as Special Administrator of the Estate of Joanne Attwood, deceased, DENNIS BERNATOWICZ, CLAUDETTE BERNATOWICZ, BRIAN DONAUBAUER, RON DROZD, MARIANNE DROZD, SARAH KUIKMAN, as Special Administrator of the Estate of Joseph Bolisenga, deceased, NANCY BRUCE, as Special Administrator of the Estate of Gordon Bruce, deceased, ANITIA COBB, as Special Administrator of the Estate of Wesley Cobb, deceased, KEN DARNELL, as Special Administrator of the Estate of Donna Darnell, deceased, CHIQUITA McMILLON, Individually and as Special Administrator of the Estate of Barbara Grant, deceased, PATRICK LACEY, as Special Administrator of the Estates of Bernice Lacey, deceased, and Robert Lacey, deceased, DONALD LYNCH, KAREN LYNCH, LEANN RANKOVICH, as Special Administrator of the Estate of Peter Markusic, deceased, BARBARA ROBERSON, Individually and as Special Administrator of the Estate of Jane Murawski, deceased, CARL ROBERSON, BONNIE ROTHMAN, TODD ROTHMAN, ABBY SARENA, JACK SARENA, ARNOLD WARD, GENEVIVE WARD, DANIEL J. FLEMING, Individually and as Guardian of the Estate of Daniel A. Fleming, a Disabled Adult, NANCY GANNON, WILLIAM GANNON, QUIANA LINDSAY, FRED JONES, MICHELE MAAN DE KOK, as Executor of the Estate of John Maan De Kok, deceased, ANGELINE MORSOVILLO, SHIRLEY OLATUNDE, LANA OLATUNDE, and JANET ELLER, Individually and on behalf of a class of similarly situated individuals, DONNA SIGNORE, Individually and as Special

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Administratrix of the Estate of Daryl Signore, )
deceased, MARY SMETANA, LINDA )
SPENCER, DAWN FRY, MICHAEL )
WAKEHAM, as Special Administrator of the )
Estate of Robert Wakeham, deceased, JOYCE )
WESOLOWSKI, and KENNETH )
WESOLOWSKI, )
                       )
        *Defendants.* )
                       )
                       )

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs General Casualty Company of Wisconsin and General Casualty Insurance Company (together, "General Casualty"), by and through their attorneys Jan M. Michaels and John M. Duczynski of Michaels, Schulwolf & Salerno, P.C., state as follows for their Complaint for Declaratory Judgment ("Complaint"):

## NATURE OF ACTION

1.     General Casualty seeks a declaration of the parties' rights and obligations with respect to the suits against Burke Engineering Corporation ("Burke") identified in ¶ 19 below ("Underlying Suits"), under insurance policies that General Casualty issued or may have issued in which Burke and/or its predecessors and/or its affiliates is a named insured (the "General Casualty Policies").   The parties dispute whether the General Casualty Policies cover the Underlying Suits.  General Casualty seeks declarations that:

    a)  The General Casualty Policies do not cover any of the causes of action alleged against Burke in the Underlying Suits;

    b)  General Casualty has no duty to defend Burke in the Underlying Suits or to pay the costs of defending those suits under the General Casualty Policies; and

    c)  General Casualty has no duty to indemnify Burke for any liability it may incur in the Underlying Suits under the General Casualty Policies.

## PARTIES

2.    Plaintiff General Casualty Company of Wisconsin is a citizen of the State of Wisconsin. It is an insurance corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business located at One General Drive, Sun Prairie, Wisconsin 53596.

3.    Plaintiff General Casualty Insurance Company, formerly known as General Casualty Company of Illinois, is a citizen of the State of Wisconsin. It is an insurance corporation organized and existing under the laws of the State of Wisconsin, with its principal place of business located at One General Drive, Sun Prairie, Wisconsin 53596.

4.    Defendant Burke Engineering Corporation is a citizen of the State of Illinois. It is a business corporation organized and existing under the laws of the State of Illinois and a named insured under certain insurance policies issued by General Casualty. Burke is seeking coverage for the Underlying Suits under certain of these policies.

5.    On information and belief, the following defendants ("Claimant Defendants") are citizens and residents of the State of Illinois. The Claimant Defendants are named only as parties with a possible interest in the dispute between General Casualty and Burke. Should any Claimant Defendants agree to be bound by the decision in this case, General Casualty will dismiss them from this lawsuit. The Claimant Defendants are: Charlene Earley, as Special Administrator of the Estate of Diana Defilippis, deceased, Vincent A. Abete, as Special Administrator of the Estate of Beverly Abete, deceased, Jeffrey Adcock, as Special Administrator of the Estate of Debra Adcock, deceased, Jennifer Arlen, Melissa Arlen, Michael Arlen, Ronald

Arlen, Lynn Avery, Thomas J. Badal, Sylvia Baker, as Special Administrator of [the Estate of] Elmer Baker, deceased, Theresa Barnes, Deborah Bauer, Janet Belak, Michael Bell Sr., Theodore Berch, Diane Berry, Individually and as Special Administrator of [the Estate of] Jeffrey Berry, deceased, Ray Bialek, Individually and as Special Administrator of the Estate of Donna Bialek, deceased, Kristin Bien, as Special Administrator of the Estate of James Bien, deceased, Jennifer Bittner, Laura Bland, as Special Administrator of the Estate of George Bland, deceased, Jeffrey Bland, Deborah Boettcher, Mary Bolisenga, as Special Administrator of the Estate of Joseph Bolisenga, deceased, Carolyn Buoniconti, Harold Brady, Kathleen Brennan, Frank Caldario, David Campbell, Kristine Tiggelaar, as Special Administrator of the Estate of Donald Campbell, deceased, Joseph Campbell, Robert Campbell, Sabine Campbell, Raymond Cantelo, Ryan Carter, Individually and as Special Administrator of the Estate of Douglas Johnson, deceased, Joanne Casey, Susan L. Khattab, as Special Administrator of the Estates of Betty S. Cheffer, deceased, and Donald H. Cheffer, deceased, Tanya Chainey, Angie Chapa, Tony Chapa, Karen Chaput, Diane Ciezadlo, Frank Ciezadlo, Kevin Clark, Robert Clark, as Parent and Next Best Friend of Andrew Clark, a Minor, Sharon Connolly, Joyce Consdor[f], as Special Administrator of the Estate of John Consdorf, deceased, Shawn Conway, Renata Corley, Kimberly A. Cruce, Timothy and Laura Daley, as Parents and Next Best Friends of Katherine Rose Daly, a Minor, Angela Dea, John Del Muro, Socorro Del Muro, Kelly Deluise, Vincent Deluise, Dennis Devries, as Special Administrator of the Estate of Gwendolyn Devries, deceased, Robert Dibenedetto, Susan Diguido, Terry Diguido, Michelle Downey, Geraldine Potter, as Special Administrator of the Estates of Irene L. Doyle, deceased and William J. Doyle, deceased, Robert Dubin, as Special Administrator of the Estate of Kristin Dubin, deceased, Norma Duncan, Robert Dunleavy, Mitchell Durlak, as Special Administrator of the Estate of Nancy Durlak, deceased, Dion Dwyer, Maria Egan, Susan

Ezerski, as Special Administrator of [the Estate of] Florence Rachuck, deceased, Allyson Falls, Anthony and Monica Fiorenzo, as Parents and Next Best Friends of Nickolas Fiorenzo, a Minor, Ed Fitzgibbons, Geraldine Fitzgibbons, Debbie Flannigan, Constance Fredrick, Harry Fredirck, Marylou Freeman, Daniel Friberg, Patricia Krause, as Special Administrator of the Estate of Brooke Fry, deceased, Everett Galusha, as Special Administrator of the Estate of Mary Ann Galusha, deceased, Adrian Garibay, Janet Gervasio, Stanley Giertuga, David Gonzalez, Phillip Gorecki, Kurt Gregory, Angela Grigola, Susan Grigola, Diane Gustafson, as Special Administrator of the Estate of Elmer Gustafson, deceased, Alexander J.L. Guyette, Duane Hanacek, Sr., as Special Administrator of the Estate of Duane Hanacek, Jr., deceased, and as Special Representative of Bernice Hanacek, Joanne Haase, Robert Haase, Pamela Harvey, Mike Hauser, as Special Administrator of the Estate of Scott Hauser, deceased, Paul Hernandez, Tammy Lawson-Hernandez, Michael Houlihan, Barbara Hull, Audrey Ithal, Glenn Ithal, Jeffrey Ithal, Nicole Ithal, Claudia Jackowiak, Individually and as Special Administrator of the Estate of Richard Jackowiak, deceased, Ruby Janes, David Jeroski, Individually and as Special Administrator of the Estates of Albert Jeroski, deceased, and Mary Jeroski, deceased, Christine Jimenez, Linda Jody, Individually and as Special Administrator of the Estates of Robert Nielsen, deceased, and Karen Nielsen, deceased, Margaret Johnson, Perry Jordan, Individually and as Special Administrator of the Estate of Ingeborg Jordan, deceased, Christie Josza, Eileen Josza, Individually and as Parent and Next Best Friend of Kaylin Josza, a Minor, Jennifer Josza, Karen Kaczynski, Ronald Kaczynski, Derek Kalchbrenner, Ellen Kakoska, Dawn Kincaid, as Special Administrator of the Estate of Fred Schneider, deceased, Brenda J. Killin, Gary Kissel, as Special Administrator of the Estates of Kenneth Kissel, deceased, and Marilyn Kissel, deceased, Judy Klesker, as Special Administrator of the Estate of Gloria Klesker, deceased, Charles Knox,

Ronald Kooima, Delores Koprowski, as Special Administrator of the Estate of Anthony Koprowski, deceased, Matthew Fry, Brianne Fry, Bruce Krystof, as Special Administrator of [the Estate of] Ed Krystof, deceased, Brian Kwasny, as Special Administrator of [the Estate of] Diane Kwasny, deceased, Susanne Landino, Rose Lamantia, as Special Administrator of [the Estates of] Mary Lamantia, deceased, and Maurice Lamantia, deceased, Debbie Larcher, Bradley Larson, Individually and as Special Administrator of the Estate of B. Jean Larson, deceased, Kathleen Lewandowski, as Special Administrator of the Estate of Richard Lewandowski, deceased, Thomas Leahy, Bonita Loeffel, William Loeffel, Individually and as Special Administrator of the Estate of Sandra Loeffel, deceased, Christine Lotz, as Mother and Next Friend of Nicole Munoz, a Minor, Paul Munoz, Brian Lucitt, Fredrick Luna, as Special Administrator of the Estate of Emma Luna, deceased, Kathy Ludwig- Hernandez, Elizabeth Ann Lysick, Douglas MacLean, as Special Administrator of the Estates of Barbara MacLean, deceased, and Harry MacLean, deceased, Jacqueline Malden, Jacob Marek, Dave Marszalek, Vanessa Martinez, David Mason, as Special Administrator of the Estate of Tricia Mason, deceased, David Matakiewicz, Jeff Matakiewicz, Asha Mathew, Mariamma Mathew, Michael Masters, Elizabeth Teresa McDermott, Sandra McElligott, Individually and as Special Administrator of the Estate of Jane S. Kramer, deceased, John McGlynn, Amy McGoogan, Joe McGrath, Tyler McMaster, Jacqualynn McNeal, Gregory Mech, Sandra Metzger, as Parent and Next Best Friend of Sara Metzger, Brian Meyer, Valerie Mezydio, Claudia Miller, Gerald Mitchell, Thomas Mitchell, Cheryl Goldberg, as Special Administrator of the Estate of Maureen Mossman, deceased, Paul Munoz, Robert M. Mudd, Eric Musilek, Ernest Musilek, Karen Mysliwiec, as the Special Administrator of the Estate of Dennis Wika, deceased, Jason Niemoth, as Special Administrator of the Estate of Annette Niemoth, deceased, Layne Novak, Terrence O'Neill, Harriet O'Neill, Beth Divirgilio, as Parent and Next

Best Friend of Damen O'Shea, Robert O'Toole, Kathleen H. Parker, Sandra Stewart, as Special Administrator of the Estate of Sylvia Perry, deceased, Catherine Peterson, Eric Plyman, Dennis Polak, Gary Pondel, Nancy S. Potter, Tami Principe, Lisa Przybyla, Jennifer Rada, Michael Rampick, Karen Regan, David Reiniche, Patricia Reiniche, Sandy Reinstein, Individually and as Parent and Next Best Friend of Lawrence Reinstein, a Minor, Teresa Rice, Richard T. Rodriguez, as Special Administrator of the Estate of Karen Rodriguez, deceased, Danielle S. Pruitt, as Special Administrator of the Estate of Martin K. Rodriguez, deceased, Sabrina Rodriguez, Nichole Ross, Karie Scaccia, as Parent and Next Best Friend of Anthony Scaccia, a Minor, Daniel Dixon, as Special Administrator of the Estate of Fredrick Schmaedeke, deceased, Linda Schober, Individually and as Parent and Next Friend of Stephanie Schober and Matthew Schober, Ryan Schober, Greg Seeber, Mordena Sephus, Wesley Serafin, Vincent Serafini, as Special Administrator of the Estate of Wayne Serafini, deceased, Michael Sewerynow, Karen Silva, Howard Smith, Larry Snyder, as Special Administrator of the Estate of Lillian Snyder, deceased, Joann Soltis, Louise Solner, Richard Solner, Lawrence Sparks, Kim Gorzycki, as Special Administrator of the Estate of Carol Spiewak, deceased, Rosemary Staszel, Shirley Stepp, Amy Stern, Anthony Stern, Kristin Stroner, Sue Studzinski, Marilyn Sullivan, Ronald Szwajkowski, as Special Administrator of the Estate of Sharyn Szwajkowski, deceased, Amy Bos, Pam Terrazzino, Individually and as Special Administrator of [the Estate of] Vince Terrazzino, deceased, Alex Terzich, Deborah Terzich, Sara Terzich, Houston Thomas, Alyssa Thompson, William Thompson, Kristina Tiggelaar, Individually and as Special Administrator of the Estates of Michael Bowers, deceased, and John Tiggelaar, deceased, Linda Tomczuk, Paul Ton, Shelly Torsan, Curtis Hailey, Jeffrey John Tuttle, Individually and as Parent and Next Best Friend of Aubrey Lynn Tuttle, a Minor, and Brianne Marie Tuttle, a Minor, Diane Ulasich, Marcy Ulasich,

Thomas Ulasich, Constantino Vivacqua, Arthur Wacholz, Judy Wacholz, Kevin Walsh, as Special Administrator of the Estate of Patrick Walsh, deceased, Thomas Bernard Wattam, Adriane Weyforth, Anna Whitcomb, Sandra White, as Special Administrator of the Estate of Robert White, deceased, Tracy Wilkinson, Ann Wise, Individually and as Parent and Next Best Friend of Willow Victoria Raine Wise, a Minor, Beth Woytek Viberg, as Special Administrator of the Estate of Amanda Woytek, deceased, Michelle Downey, as Special Administrator of the Estate of Brandi Young, deceased, Kathleen Young, Valerie Young, Melissa Zirbel, Ritas Ziupsnys, Judy Alicia, as Special Administrator of the Estate of Edwin Alicia, deceased, Merline Allen, Theo Allen, Ray Attwood, as Special Administrator of the Estate of Joanne Attwood, deceased, Dennis Bernatowicz, Claudette Bernatowicz, Brian Donaubauer, Ron Drozd, Marianne Drozd, Sarah Kuikman, as Special Administrator of the Estate of Joseph Bolisenga, deceased, Nancy Bruce, as Special Administrator of the Estate of Gordon Bruce, deceased, Anitia Cobb, as Special Administrator of the Estate of Wesley Cobb, deceased, Ken Darnell, as Special Administrator of the Estate of Donna Darnell, deceased, Chiquita McMillon, Individually and as Special Administrator of the Estate of Barbara Grant, deceased, Patrick Lacey, as Special Administrator of the Estates of Bernice Lacey, deceased, and Robert Lacey, deceased, Donald Lynch, Karen Lynch, Leann Rankovich, as Special Administrator of the Estate of Peter Markusic, deceased, Barbara Roberson, Individually and as Special Administrator of the Estate of Jane Murawski, deceased, Carl Roberson, Bonnie Rothman, Todd Rothman, Abby Sarena, Jack Sarena, Arnold Ward, Genevive Ward, Daniel J. Fleming, Individually and as Guardian of the Estate of Daniel A. Fleming, a Disabled Adult, Nancy Gannon, William Gannon, Quiana Lindsay, Fred Jones, Michele Maan De Kok, as Executor of the Estate of John Maan De Kok, deceased, Angeline Morsovillo, Shirley Olatunde, Lana Olatunde, and Janet Eller, Individually and on behalf of a

class of similarly situated individuals, Donna Signore, Individually and as Special Administratrix of the Estate of Daryl Signore, deceased, Mary Smetana, Linda Spencer, Dawn Fry, Michael Wakeham, as Special Administrator of the Estate of Robert Wakeham, deceased, Joyce Wesolowski, and Kenneth Wesolowski.

## JURISDICTION AND VENUE

6.     This declaratory judgment action is brought pursuant to 28 U.S.C. §§ 2201, 2202 and Rule 57 of the Federal Rules of Civil Procedure.

7.     There is an actual, justiciable controversy between Plaintiffs and Defendants within the meaning of 28 U.S.C. § 2201 regarding the scope and extent of insurance coverage provided under the General Casualty Policies, as more particularly described below.

8.     This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the suit is between citizens of different states.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), in that a substantial part of the events or omissions giving rise to this action took place in this District.

## BACKGROUND

10.     This action addresses insurance coverage for claims and suits by the Claimant Defendants against Burke arising out of the alleged delivery of contaminated tap water to water consumers in the Village of Crestwood, Illinois.

11.     On information and belief, suits against the Village of Crestwood in the Circuit Court of Cook County Illinois allege, in substance, that:

a) The Village of Crestwood is a residential suburb southwest of Chicago administered for most of the last thirty years by its former mayors, Chester Stranczek and his son, Robert Stranczek;

b) In 1986 the U.S. EPA advised the Village that Well No. One, which the Village used to supply drinking water to its residents, was contaminated with the solvent perchloroethylene ("PCE" or "perc") and its carcinogenic breakdown products, vinyl chloride and dichloroethylene;

c) This contamination emanated from the nearby Playfield Cleaners;

d) Between 1986 and 2007, Crestwood continued to regularly distribute water from Well No. One through its municipal water system;

e) During this period, the Village repeatedly certified to Illinois regulators that it was distributing Lake Michigan water purchased from a neighboring suburb almost exclusively, and that it used Well No. One only rarely, as an emergency backup;

f) Inconsistencies in Crestwood's water reports prompted state authorities to investigate further in 2007, resulting in Well No. One being taken out of service; and

g) The Village of Crestwood's possible distribution of contaminated water became public with the publication of a Chicago Tribune feature article in April 2009.

12.    Between 2009 and 2011, more than two hundred individual claimants and several alleged classes filed more than twenty (20) suits in the Circuit Court of Cook County, Illinois. All of the pending suits were consolidated for certain purposes in June 2010, under the Law

Division case caption and number *Barrera v. Village of Crestwood, et al.*, No 09 L 007091. Additional Cook County suits filed since then have been added to the consolidated case (the "Crestwood Suits"). Each of the consolidated suits has continued to proceed under its own pleadings. Class action certification in certain suits was denied in 2012.

13.     Before 2013, the most frequently named defendants in the Underlying Suits were the Village of Crestwood, the former mayors Stranczek, Playfield Cleaners and its operators, and two Crestwood Water Department employees, Frank Scaccia and Theresa Neubauer.

14.     Scaccia and Neubauer were convicted in 2013 of making false statements in connection with Crestwood water operations and were each sentenced to two years' probation.

15.     The Crestwood Suits seek damages for a variety of serious alleged bodily injuries and resulting death caused by the contaminated water. The complaints also originally alleged various emotional injuries and property damage. For example, the complaints generally sought damages for the cost of the contaminated water to affected residents and for diminution of property values in the Village as a result of the alleged official misconduct. Numerous causes of action were asserted in the initial complaints and amended complaints. These causes of action included negligence, fraud, violation of consumer protection laws and civil conspiracy, among others. Most complaints alleged ten to thirty counts against the various defendants. Certain property damage claims have been settled, and the trial court has dismissed certain other claims for civil conspiracy.

16.     Although the complaints allege a variety of injuries, causes of action and damages, and plead them in various ways, they all allege that Village of Crestwood, acting through its officers and employees, intentionally distributed to consumers water that was known to be contaminated with harmful substances.

17.    Insurance issues arising out of these claims came before this Court in 2009 in litigation between the Village of Crestwood and certain insurers.  This litigation resulted in the Court entering summary judgment, finding that the Village was not entitled to a defense or indemnity for the Water Claims because of the pollution exclusions in the policies at issue. *Scottsdale Indem. Co. v. Village of Crestwood*, 784 F. Supp 2d 988 (N.D. Ill. 2011), *aff'd,* 673 F.3d 715 (7th Cir. 2012).

### THE UNDERLYING SUITS

18.    This action addresses insurance coverage for the Claimant Defendants' Underlying Suits.  The Underlying Suits were first asserted in 2013 and 2014 in complaints filed in the following Crestwood Suits:

| **Action/Pleading** | **Case No.** | **Date Filed** |
|---|---|---|
| *Judy Alicia, et al. v. Crestwood, et al.* Second Amended Complaint at Law | 10 L 4436 | October 21, 2013 |
| *Daniel Fleming v. Crestwood, et al.* First Amended Complaint | 10 L 4392 | August 1, 2013 |
| *Fred Jones v. Crestwood, et al.* Plaintiff's Second Amended Complaint at Law | 11 L 13611 | October 21, 2013 |
| *Earley v. Crestwood, et al.* Fourth Amended Complaint; Fifth Amended Complaint | 09 L 7091 (Formerly: 09 CH 32969) | May 14, 2013; October 17, 2013 |
| *Joyce Wesolowski v. Crestwood, et al.* Third Amended Complaint at Law | 09 L 11761 | October 18, 2013 |
| *Spencer and Fry v. Crestwood, et al.* Amended Complaint | 11 L 65006 | October 22, 2013 |
| *Mann de Kok v. Crestwood, et al.* Second Amended Complaint at Law | 09 L 5746 | October 21, 2013 |
| *Gannon v. Crestwood, et al.* Second Amended Complaint at Law | 10 L 4291 | October 21, 2013 |
| *Morsovillo v. Crestwood, et al.* Amended Complaint at Law | 10 L 7217 | October 21, 2013 |
| *Smetana v. Crestwood, et al.* Amended Complaint at Law; Second Amended Complaint at Law | 13 L 11130 | November 15, 2013; January 21, 2014 |
| *Olatunde v. Crestwood, et al.* Second Amended Complaint | 10 L 11548 | October 18, 2013 |

| Action/Pleading | Case No. | Date Filed |
|---|---|---|
| *Michael Wakeham v. Crestwood, et al.* Complaint at Law | 14 L 07717 | July 23, 2014 |

19.     A true and correct copy of each amended complaint filed in 2013 and 2014 in the Underlying Suits, as identified in the preceding paragraph, is attached as an exhibit to this Complaint, with the exhibit corresponding to each Underlying Suit identified below:

| Action/Pleading | Case No. | Exhibit No. |
|---|---|---|
| *Judy Alicia, et al. v. Crestwood, et al.* Second Amended Complaint at Law | 10 L 4436 | Exhibit A |
| *Daniel Fleming v. Crestwood, et al.* First Amended Complaint | 10 L 4392 | Exhibit B |
| *Fred Jones v. Crestwood, et al.* Plaintiff's Second Amended Complaint at Law | 11 L 13611 | Exhibit C |
| *Earley v. Crestwood, et al.* Fourth Amended Complaint; Fifth Amended Complaint | 09 L 7091 (Formerly: 09 CH 32969) | Exhibit D; Exhibit E |
| *Joyce Wesolowski v. Crestwood, et al.* Third Amended Complaint at Law | 09 L 11761 | Exhibit F |
| *Spencer and Fry v. Crestwood, et al.* Amended Complaint | 11 L 65006 | Exhibit G |
| *Mann de Kok v. Crestwood, et al.* Second Amended Complaint at Law | 09 L 5746 | Exhibit H |
| *Gannon v. Crestwood, et al.* Second Amended Complaint at Law | 10 L 4291 | Exhibit I |
| *Morsovillo v. Crestwood, et al.* Amended Complaint at Law | 10 L 7217 | Exhibit J |
| *Smetana v. Crestwood, et al.* Amended Complaint at Law; Second Amended Complaint at Law | 13 L 11130 | Exhibit K; Exhibit L |
| *Olatunde v. Crestwood, et al.* Second Amended Complaint | 10 L 11548 | Exhibit M |
| *Michael Wakeham v. Crestwood, et al.* Complaint at Law | 14 L 07717 | Exhibit N |

20.     The Fourth Amended Complaint in *Earley* pleads five counts against Burke: negligence (Count V); fraudulent concealment (Count VI); violation of the Consumer Fraud and Deceptive Practices Act (Count VIII); common law fraud (Count X); and civil conspiracy (Count XI).   Each count pleads that Burke intentionally failed to disclose or concealed the harmful

content of water distributed by the Village of Crestwood. The most frequent allegation, which appears in ¶ 51 of Counts VI, VIII and X, alleges:

> Defendants intentionally concealed the fact that it was using well water contaminated with hazardous chemicals to supply tap water to the Plaintiffs and the Plaintiffs' decedents in order to avoid the cost of making water safe.

21.     The Fifth Amended Complaint in *Earley* pleads four counts alleging the following causes of action against Burke: negligence (Count V); violation of the Consumer Fraud and Deceptive Practices Act (Count VII); common law fraud (Count IX); and civil conspiracy to commit fraud (Count X). Each count pleads that Burke intentionally concealed the harmful content of water distributed by the Village of Crestwood, with the most frequent allegation appearing in ¶ 51 of Counts V, VII and ¶ 52 of Count IX in substantially the same form as ¶ 51 of the Fourth Amended Complaint in *Earley*.

22.     Each of the other eleven Underlying Suits brought against Burke in 2013 and 2014 identified in ¶ 19 pleads that Burke intentionally concealed the harmful content of water distributed by the Village of Crestwood in multiple counts containing allegations substantially similar or identical to those in the Fourth and Fifth Amended Complaints in *Earley*.

23.     Each of the thirteen complaints in the Underlying Suits brought against Burke in 2013 and 2014 identified in ¶ 19 pleads that Burke was involved in providing contaminated water to the plaintiffs in the context of engineering consultation by Burke for the Village of Crestwood. The most frequent form of these allegations appears in ¶ 14 of the Fourth and Fifth Amended Complaints in the *Earley* suit asserting that:

> During all times relevant, Burke Engineering was an engineering firm hired by CRESTWOOD to consult the Village on civil engineering and civic planning matters and to act as a contractor in the development of public improvements.

20

24.     On information and belief, in June 2014 the parties agreed to voluntarily dismiss the counts in each of the Underlying Suits brought against Burke in 2013 and 2014 identified in ¶ 19 that pled claims based on violation of the Consumer Fraud and Deceptive Practices Act.

25.     On July 3, 2014 the Honorable Thomas L. Hogan, Judge of the Circuit Court, issued his Opinion and Order in the consolidated *Barerra* case on Burke's motion to dismiss the Fifth Amended Complaint in *Earley*.  In his ruling, which was expressly extended to all similar causes of action pled in all similar counts in all of the Underlying Suits brought against Burke in 2013 and 2014 identified in ¶ 19, Judge Hogan dismissed with prejudice all negligence and common law fraud counts, and dismissed with leave to replead all civil conspiracy counts in those Underlying Suits.  This order effectively dismissed, either with prejudice or with leave to replead, all of the causes of action against Burke in all of the Underlying Suits brought against Burke in 2013 and 2014 identified in ¶ 19.

26.     In December 2014 and early 2015, the following additional amended complaints were filed against Burke in the Underlying Suits:

| **Action/Pleading** | **Case No.** | **Date Filed** |
|---|---|---|
| *Judy Alicia, et al. v. Crestwood, et al.*<br>Fourth Amended Complaint at Law<br>Count VIII | 10 L 4436 | December 30, 2014 |
| *Daniel Fleming v. Crestwood, et al.*<br>Fourth Amended Complaint<br>Count IX | 10 L 4392 | December 30, 2014 |
| *Fred Jones v. Crestwood, et al.*<br>Plaintiff's Third Amended Complaint at Law<br>Count VIII | 11 L 13611 | December 23, 2014 |
| *Earley v. Crestwood, et al.*<br>Sixth Amended Complaint<br>Count X | 09 L 7091<br>(Formerly:<br>09 CH<br>32969) | December 5, 2014 |
| *Joyce Wesolowski v. Crestwood, et al.*<br>Fourth Amended Complaint at Law<br>Counts XX, XXI, XXII, XXIII | 09 L 11761 | December 30, 2014 |

| **Action/Pleading** | **Case No.** | **Date Filed** |
|---|---|---|
| *Spencer and Fry v. Crestwood, et al.* Third Amended Complaint (This Pleading is unavailable from the Cook County Court as of the date of filing of General Casualty's Complaint for Declaratory Judgment.) | 11 L 65006 | February 9, 2015 |
| *Mann de Kok v. Crestwood, et al.* Third Amended Complaint at Law Counts XVII and XVIII | 09 L 5746 | December 30, 2014 |
| *Gannon v. Crestwood, et al.* Third Amended Complaint at Law Count XIX | 10 L 4291 | December 30, 2014 |
| *Morsovillo v. Crestwood, et al.* Third Amended Complaint at Law Count XXII | 10 L 7217 | January 22, 2015 |
| *Smetana v. Crestwood, et al.* Third Amended Complaint at Law Count IX | 13 L 11130 | December 29, 2014 |
| *Olatunde v. Crestwood, et al.* Third Amended Complaint Counts IV, VII | 10 L 11548 | December 30, 2014 |
| *Michael Wakeham v. Crestwood, et al.* Plaintiff Michael Wakeham's First Amended Complaint at Law Count X | 14 L 07717 | January 12, 2015 |
| *Donna Signore v. Crestwood, et al.* Second Amended Complaint Count X | 10 L 04530 | February 2, 2015 |

27.     A true and correct copy of each further amended complaint filed in December, 2014 and early 2015 in the Underlying Suits, as identified in ¶ 26, is attached as an exhibit to this Complaint, with the exhibit corresponding to each Underlying Suit identified below.

| **Action/Pleading** | **Case No.** | **Exhibit No.** |
|---|---|---|
| *Judy Alicia, et al. v. Crestwood, et al.* Fourth Amended Complaint at Law | 10 L 4436 | Exhibit O |
| *Daniel Fleming v. Crestwood, et al.* Fourth Amended Complaint | 10 L 4392 | Exhibit P |
| *Fred Jones v. Crestwood, et al.* Plaintiff's Third Amended Complaint at Law | 11 L 13611 | Exhibit Q |
| *Earley v. Crestwood, et al.* Sixth Amended Complaint (Filed under No. 09 L 15924) | 09 L 7091 (Formerly: 09 CH 32969) | Exhibit R |

| Action/Pleading | Case No. | Exhibit No. |
|---|---|---|
| *Joyce Wesolowski v. Crestwood, et al.* Fourth Amended Complaint at Law | 09 L 11761 | Exhibit S |
| *Spencer and Fry v. Crestwood, et al.* Third Amended Complaint (This Pleading is unavailable from the Cook County Court as of the date of filing of General Casualty's Complaint for Declaratory Judgment.) | 11 L 65006 | Exhibit T |
| *Mann de Kok v. Crestwood, et al.* Third Amended Complaint at Law | 09 L 5746 | Exhibit U |
| *Gannon v. Crestwood, et al.* Third Amended Complaint at Law | 10 L 4291 | Exhibit V |
| *Morsovillo v. Crestwood, et al.* Third Amended Complaint at Law | 10 L 7217 | Exhibit W |
| *Smetana v. Crestwood, et al.* Third Amended Complaint at Law | 13 L 11130 | Exhibit X |
| *Olatunde v. Crestwood, et al.* Third Amended Complaint | 10 L 11548 | Exhibit Y |
| *Michael Wakeham v. Crestwood, et al.* Plaintiff Michael Wakeham's First Amended Complaint at Law | 14 L 07717 | Exhibit Z |
| *Donna Signore v. Crestwood, et al.* Second Amended Complaint | 10 L 04530 | Exhibit AA |

28. Each further amended complaint filed in December 2014 and early 2015 in the Underlying Suits re-pleads or incorporates by reference various of the counts and causes of action previously dismissed from the earlier complaints in the Underlying Suits in order to preserve those claims for potential reinstatement on appeal.

29. In addition, each further amended complaint filed in December 2014 and early 2015 in the Underlying Suits alleges, in essentially the same terms, a cause of action against Burke titled "Civil Conspiracy" or "Civil Conspiracy to Commit Fraud" that appears as Count X in the *Earley* Sixth Amended Complaint as follows:

## CIVIL CONSPIRACY TO COMMIT FRAUD
## BURKE ENGINEERING

1-56. Plaintiffs repeat, adopt, and reallege paragraphs 1 to 56 of Count I as though fully set forth herein.

57.     Defendants CRESTWOOD, CHESTER STRANCZEK, and ROBERT STRANCZEK contracted with BURKE ENGINEERING as a civil and environmental engineering consultant and contractor.

58.     In serving as a civil and environmental engineering consultant and contractor, BURKE ENGINEERING became knowledgeable of CRESTWOOD's water systems and it failings and deficits. This knowledge included the following facts about CRESTWOOD's Well Number One: that the Well was contaminated with VOC's, that the VOC's were originally detected in the Well in 1985, that the IEPA required that the Well be tested and monitored regularly and continuously, that the IEPA informed CRESTWOOD, CHESTER STRANCZEK, and ROBERT STRANCZEK about the contamination and need for testing, that CRESTWOOD, CHESTER STRANCZEK, and ROBERT STRANCZEK informed that IEPA that the Well was not in use, and that the Well was actually still being used to provide water for the Plaintiffs and Plaintiffs' decedents.

59.     Pursuant to their contractual relationship, BURKE ENGINEERING agreed to use its environmental and civil engineering expertise to advise CRESTWOOD, CHESTER STRANCZEK, and ROBERT STRANCZEK on the means by which they could conceal their use of Well Number One for the illegal purposes of avoiding detection by authorities, avoiding mandated testing, and avoiding reporting to the IEPA, State of Illinois, and Plaintiffs and Plaintiffs' decedents.

60.     BURKE ENGINEERING offered this advice despite its knowledge that it would expose the public to risk of injury or harm.

61.     BURKE ENGINEERING offered this advice despite knowledge that a failure to report contamination would be illegal.

62.     BURKE ENGINEERING offered this advice for the financial gain to be achieved from the contract with CRESTWOOD.

63.     BURKE ENGINEERING provided this advice to CRESTWOOD, CHESTER STRANCZEK, and ROBERT STRANCZEK pursuant to their agreement, and, in furtherance of the terms of this agreement, CRESTWOOD, CHESTER STRANCZEK, and ROBERT STRANCZEK committed the tortious acts of negligence (under the common law, Survival Act, and Wrongful Death Act), willful and wanton misconduct (under the common law, Survival Act, and Wrongful Death Act), common law fraud, and public nuisance through deceiving the Plaintiffs, Plaintiffs' decedents, and the State of Illinois.

64.     The Plaintiffs and the Plaintiffs' decedents relied upon Defendants CRESTWOOD, CHESTER STRANCZEK, and ROBERT STRANCZEK's fraud, deception, misrepresentations, and omissions to their damage, detriment, loss, injury and death.

65.     The Defendant BURKE ENGINEERING's fraudulent concealment of the actions of Defendants CRESTWOOD, CHESTER STRANCZEK, and ROBERT STRANCZEK and its guidance of those actions prevented the Plaintiffs and the Plaintiffs' decedents from learning of their injuries and rights to causes of action against BURKE ENGINEERING, even after the exercise of reasonable diligence, until the information was disclosed during the federal criminal trial of Theresa Neubauer in April of 2013.

66.     Fraudulent concealment tolls the statute of limitations.

67.     Defendant BURKE ENGINEERING's engaged in civil conspiracy with Defendants CRESTWOOD, CHESTER STRANCZEK, and ROBERT STRANCZEK, whereby these defendants agreed to and did deceive the Plaintiffs and Plaintiffs' decedents about the use and presence of contaminated Well water. As a direct and proximate result of this civil conspiracy, the Plaintiffs and the Plaintiffs' decedents were injured and sustained bodily injury in mind and body, and will, in the future, continue to suffer. The Plaintiffs and the Plaintiffs' decedents expended and became liable for sums of money for medical care and services and will, in the future, expend money for the same with respect to said.

WHEREFORE, the Plaintiffs respectfully demand judgment against the Defendants in an amount in excess of $50,000 and which substantially exceeds the jurisdictional requirements of the Law Division, Cook County, Illinois.

30.     As of the time of filing of this Complaint, the civil conspiracy claim set out in the immediately preceding paragraph is the only active claim at issue in the Underlying Suits against Burke.

## THE INSURANCE POLICIES

31.     General Casualty issued to Burke Engineering Corporation or its predecessors, including Edmund M. Burke Engineering, Ltd., primary general liability insurance for thirteen single-year policy periods, beginning with the December 1, 1997 – December 1, 1998 period and ending with the December 1, 2009 – December 1, 2010 period.  For the policy periods from

December 1, 1997 – December 1, 1998 through December 1, 1999 – December 1, 2000, primary general liability insurance is provided in a Cornerstone Policy Liability Coverage Form that is part of a Cornerstone Policy that also insures against certain loss or damage to scheduled property. For the policy periods from December 1, 2000 – December 1, 2001 through December 1, 2009 – December 1, 2010, primary general liability insurance is set forth in a Commercial Marketplace Policy Liability Coverage Form that is part of a Commercial Marketplace Policy that also insures against certain loss or damage to scheduled property. The following policies, which include primary general liability insurance issued by General Casualty to Burke Engineering Corporation or its predecessors including Edmund M. Burke Engineering, Ltd. (the "Primary Policies"), are attached as exhibits to this Complaint as follows:

| Policy No. | Policy Period | Exhibit No. |
|------------|---------------|-------------|
| CCS0171637 | 12/1/1997 to 12/1/1998 | Exhibit BB |
| CCS0171637 | 12/1/1998 to 12/1/1999 | Exhibit CC |
| CCS0171637 | 12/1/1999 to 12/1/2000 | Exhibit DD |
| CCS0171637 | 12/1/2000 to 12/1/2001 | Exhibit EE |
| CCS0171637 | 12/1/2001 to 12/1/2002 | Exhibit FF |
| CCS0171637 | 12/1/2002 to 12/1/2003 | Exhibit GG |
| CCS0171637 | 12/1/2003 to 12/1/2004 | Exhibit HH |
| CCS0171637 | 12/1/2004 to 12/1/2005 | Exhibit II |
| CCS0171637 | 12/1/2005 to 12/1/2006 | Exhibit JJ |
| CCS0171637 | 12/1/2006 to 12/1/2007 | Exhibit KK |
| CCS0171637 | 12/1/2007 to 12/1/2008 | Exhibit LL |
| CCS0171637 | 12/1/2008 to 12/1/2009 | Exhibit MM |
| CCS0171637 | 12/1/2009 to 12/1/2010 | Exhibit NN |

32.     The following excerpts are examples of certain relevant policy provisions contained in the 1997-1998 Primary Policy. The language that appears in the later Primary Policies is identical for purposes of analyzing potential coverage for the Underlying Suits. The Primary Policies provide:

## CORNERSTONE POLICY LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shall in the Declarations. The words "we", "us", and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION C -- WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION F. - LIABILITY AND MEDICAL EXPENSES DEFINITIONS.

**A.      COVERAGES**

**1.       Business Liability**

**a.**      We will pay those sums which the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," "personal injury," or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury," "property damage," "personal injury," or "advertising injury" to which this insurance does not apply. We may at our discretion investigate any "occurrence" or "offense" and settle any such claim or "suit" that may result. . . .

* * *

no other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under COVERAGE EXTENSIONS-SUPPLEMENTARY PAYMENTS.

**b.**      This insurance applies:

(1)      To "bodily injury" and "property damage" only if:

(a)      The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(b)      The "bodily injury" or "property damage" occurs during the policy period.

* * *

27

**B.      EXCLUSIONS**

**1.      Applicable to Business Liability Coverage**

This insurance does not apply to:

**a.      Expected or Intended Injury**

"Bodily injury" or "Property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

* * *

**j.      Professional Services**

"Bodily Injury", "property damage", "personal injury" or "advertising injury" due to rendering or failure to render any professional service. This includes but is not limited to:

* * *

**(2)**      Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specification;

**(3)**      Supervisory, inspection or engineering services;

* * *

**F.      LIABILITY AND MEDICAL EXPENSES DEFINITIONS**

* * *

**3.      "Bodily Injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

* * *

**12.      "Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

33.     The immediately preceding paragraph does not exhaustively quote all relevant provisions of the Primary Policies.  Other provisions of the Primary Policies may also be relevant to determining coverage for the Underlying Suits.  These include, without limitation:

a) Provisions describing insurance for "Personal Injury" and "Advertising Injury";

b) Exclusions of contractual liability and pollution and exclusions applicable to certain "Personal Injury" and "Advertising Injury";

c) Conditions concerning duties in the event of occurrence, offense, claim or suit;

d) Definitions of "Personal Injury" "Advertising Injury" and "Your Work"; and

e) Common Policy Conditions concerning concealment, misrepresentation or fraud and other insurance.

34.     General Casualty issued to Burke Engineering Corporation or its predecessors, including Edmund M. Burke Engineering, Ltd., commercial umbrella liability insurance policies for thirteen single-year policy periods, beginning with the December 1, 1997 – December 1, 1998 period and ending with the December 1, 2009 – December 1, 2010 period.  The following commercial umbrella liability insurance policies issued by General Casualty to Burke Engineering Corporation or its predecessors, including Edmund M. Burke Engineering, Ltd. (the "Umbrella Policies") are attached as exhibits hereto as follows:

| Policy No. | Policy Period | Exhibit No. |
|---|---|---|
| CCU0171637 | 12/1/1997 to 12/1/1998 | Exhibit OO |
| CCU0171637 | 12/1/1998 to 12/1/1999 | Exhibit PP |
| CCU0171637 | 12/1/1999 to 12/1/2000 | Exhibit QQ |
| CCU0171637 | 12/1/2000 to 12/1/2001 | Exhibit RR |
| CCU0171637 | 12/1/2001 to 12/1/2002 | Exhibit SS |

| Policy No. | Policy Period | Exhibit No. |
|------------|---------------|-------------|
| CCU0171637 | 12/1/2002 to 12/1/2003 | Exhibit TT |
| CCU0171637 | 12/1/2003 to 12/1/2004 | Exhibit UU |
| CCU0171637 | 12/1/2004 to 12/1/2005 | Exhibit VV |
| CCU0171637 | 12/1/2005 to 12/1/2006 | Exhibit WW |
| CCU0171637 | 12/1/2006 to 12/1/2007 | Exhibit XX |
| CCU0171637 | 12/1/2007 to 12/1/2008 | Exhibit YY |
| CCU0171637 | 12/1/2008 to 12/1/2009 | Exhibit ZZ |
| CCU0171637 | 12/1/2009 to 12/1/2010 | Exhibit AAA |

35.     The following excerpts are examples of certain relevant policy provisions that appear in the 1997-1998 Umbrella Policy.  The language in each of the subsequent Umbrella Policies (insuring the December 1, 1998 – December 1, 1999 through December 1, 2005 – December 1, 2006 periods) is identical for purposes of determining if the Underlying Suits are covered:

### COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us", and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under **WHO IS AN INSURED (SECTION III).**

Other words and phrases that appear in quotation marks have special meaning.  Refer to **DEFINITIONS (SECTION V).**

**SECTION I – COVERAGES**

**1.      Insuring Agreements.**

**Coverage A. –Bodily injury and Property Damage Liability**

30

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under 3. Defense, Settlement and Supplementary Payments.

b.    This insurance applies to "bodily injury" and "property damage" only if the "bodily injury" or "property damage" is caused by an "occurrence."The "occurrence" may happen anywhere in the world.

\* \* \*

**2.    Application of Insurance.**

The rules shown below determine when the insurance provided by this Coverage Part applies to injury or damage.

a.    Subject to all the other provisions and exclusions of this Coverage Part, this insurance applies only to injury or damage arising from "occurrences" or offenses which take place during the policy period….

36.    The following excerpts are examples of certain relevant policy provisions that appear in the 2006-2007 Umbrella Policy.  The language in each of the subsequent Umbrella Policies (for the periods December 1, 2007 – December 1, 2008 through December 1, 2009 – December 1, 2010) is identical for purposes of determining if the Underlying Suits are covered:

**COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM**

Various provisions in this policy restrict coverage.   Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy.  The words "we", "us", and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II -- Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V. -- Definitions.

SECTION I – COVERAGES

COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

a. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But:

(1) The amount we will pay for the "ultimate net loss" is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

37.    The following are examples of certain relevant exclusions and definitions in the 1997-1998 Umbrella Policy.  The exclusions and definitions in each of the subsequent Umbrella Policies (for the periods December 1, 1998 – December 1, 1999 through December 1, 2009 – December 1, 2010) are identical for purposes of determining if the Underlying Suits are covered:

**EXCLUSIONS**

This insurance does not apply to:

"Bodily injury" or "Property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

* * *

**DEFINITIONS**

* * *

**"Bodily Injury"** means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. . . .

* * *

**"Occurrence"** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

38.    The following professional liability exclusion appears in the 1997-1998 Umbrella Policy.  The language in each of the subsequent Umbrella Policies (for the periods December 1, 1998 – December 1, 1999 through December 1, 2001 – December 1, 2002, and for the periods December 1, 2006 – December 1, 2007 through December 1, 2009 – December 1, 2010) is identical for purposes of determining if the Underlying Suits are covered:

## EXCLUSION – ENGINEERS, ARCHITECTS OR
## SURVEYORS PROFESSIONAL LIABILITY

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the rendering or failure to render any professional services by or for you, including:

The preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specification; and

Supervisory, inspection or engineering services.

39.     The above paragraphs do not exhaustively quote all relevant provisions of the Umbrella Policies. All other provisions of the Umbrella Policies also may be relevant to determining if the Underlying Suits are covered, including without limitation:

  a)  Provisions relating to insurance for "Personal Injury" and "Advertising Injury";

  b)  Limits of liability provisions;

  c)  Contractual liability and pollution exclusions and exclusions applicable to certain "Personal Injury" and "Advertising Injury";

  d)  Conditions concerning duties in the event of occurrence, offense, claim or suit;

  e)  Definitions of "Personal Injury" "Advertising Injury" and "Your Work"; and

  f)  Common Policy Conditions concerning concealment, misrepresentation or fraud and other insurance.

40.     General Casualty issued primary general liability insurance to Burke Engineering Corporation's former affiliates, Longview Consultants, Inc. and Edmund M. Burke & Associates, Ltd. These policies insured two single-year policy periods: October 9, 2007 –

October 9, 2008, and October 9, 2008 – October 9, 2009. These policies (the "Longview Policies") are attached as exhibits hereto as follows:

| Policy No. | Policy Period | Exhibit Number |
|---|---|---|
| CGA0585193 | 10/9/2007 to 10/9/2008 | Exhibit BBB |
| CGA0585193 | 10/9/2008 to 10/9/2009 | Exhibit CCC |

41.     On information and belief, neither Longview Consultants, Inc. nor Edmund M. Burke & Associates, Ltd., is a defendant in any of the Underlying Suits. They are not professional engineering firms, and did not participate in any engineering services that Burke Engineering Corporation or its predecessor Edmund M. Burke Engineering, Ltd. is alleged to have provided to the Village of Crestwood. Burke Engineering Corporation has not tendered its defense of the Underlying Suits under these Longview Policies. General Casualty requests declaratory relief as to these policies in this action to avoid confusion potentially resulting from Longview Consultants having effectively merged with Burke Engineering Corporation, after the Longview Policies expired, with the surviving entity changing its name to Burke Engineering Corporation.

42.     To the extent there is any claim that the Longview Policies cover the Underlying Suits, the provisions of these Policies pertinent to determining coverage are essentially identical to the relevant provisions of the Primary Policies referred to in ¶ 32 and ¶ 33 above.

43.     On information and belief, certain records of General Casualty indicate that General Casualty may have issued primary general liability insurance to Edmund M. Burke Engineering, Ltd., a predecessor of Burke Engineering Corporation. These policies may have insured five single-year policy periods, beginning with the December 1, 1992 – December 1, 1993 period and ending with the December 1, 1996 – December 1, 1997 period, each under policy number CBC0171637 (the "Lost Primary Policies"). General Casualty has not located

35

any copies of these Lost Primary Policies, and Burke has represented that it has no information concerning whether any of these policies were issued, the location of any copies of these policies, or their contents.

44.     On information and belief, if the Lost Primary Policies were issued, they included provisions substantially identical to those found in the 1997-1998 Primary Policy.   On information and belief, if the Lost Primary Policies were issued, the provisions of those policies relevant to determining coverage for the Underlying Suits were essentially identical to the relevant provisions of the Primary Policies referred to in ¶ 32 and ¶ 33 above.

45.     On information and belief, certain General Casualty records indicate that General Casualty may have issued umbrella liability insurance policies to Edmund M. Burke Engineering, Ltd., a predecessor of Burke Engineering Corporation.   These policies may have insured five single-year policy periods, beginning with the December 1, 1992 – December 1, 1993 period and ending with the December 1, 1996 – December 1, 1997 period, all under policy number CCU0171637 (the "Lost Umbrella Policies").   General Casualty has not located any copies of these Lost Umbrella Policies, and Burke has represented that it has no information concerning whether any of these policies were issued, the location of any copies of these policies, or their contents.

46.     On information and belief, if the Lost Umbrella Policies were issued, they included policy forms similar to, and contained provisions substantially identical to, those found in the 1997-1998 Umbrella Policy. On information and belief, if the Lost Umbrella Policies were issued, the provisions of those policies relevant to determining coverage for the Underlying Suits were essentially identical to the relevant provisions of the Umbrella Policies referred to in ¶¶ 35, 37 and 38 above.

## NOTICE, RESERVATIONS AND OTHER INSURANCE

47.     On or about June 24, 2013 Burke's counsel gave notice to General Casualty that it had been served with the Forth Amended Complaint in the *Earley* Underlying Suit identified in ¶ 19 of this Complaint.  Counsel purported to tender Burke's defense to General Casualty while advising that counsel had appeared in *Earley* and had commenced its defense.

48.     On or about July 3, 2013 Essex Insurance Company ("Essex") accepted Burke's tender of the defense of the *Earley* Underlying Suit under its Professional Liability Insurance issued to Burke.  On information and belief, Essex subsequently accepted Burke's defense in the other Underlying Suits identified in ¶ 19 as they were received in late 2013. On information and belief, Essex accepted and undertook Burke's defense in all of the Underlying Suits without reserving any rights against General Casualty.

49.     Upon receipt of the *Earley* Underlying Suit in June 2013, General Casualty generally reserved its rights and defenses and requested certain information and documents from Burke to permit General Casualty to evaluate the coverage for the *Earley* suit.  Burke thereafter persistently failed to fully respond to General Casualty's information requests.

50.     Through the remainder of 2013, Burke failed to immediately inform General Casualty of the other Underlying Suits served in late 2013 up until it identified these suits in a February 14, 2014 letter from its counsel.  In that letter Burke failed to inform General Casualty that Essex was defending it, and instead represented that "Burke has been defending itself in the consolidated Earley lawsuits."

51.     Through the second half of 2013 and the first half of 2014, Burke persistently refused to provide information to General Casualty or ignored General Casualty's information requests, refused to provide General Casualty access to its files and documents, and did not

comply with General Casualty's requests that Burke send copies of additional amended complaints and other papers that Burke had received in connection with the Underlying Suits to General Casualty.

52.     In March 2014 General Casualty provided to Burke a detailed explanation of why it did not have a present duty to defend the *Earley* Underlying Suit, and a detailed explanation of its reservations of rights concerning coverage, based on the limited and incomplete information that General Casualty had received from Burke up to that point.

53.     In June 2014, for the first time, Burke provided General Casualty with copies of the other Underlying Suits brought against Burke in late 2013 and 2014 identified in ¶ 19 above. In a January 5, 2015 letter, General Casualty supplemented its reservations of rights concerning coverage for these additional Underlying Suits.

54.     In February 2015, Burke gave General Casualty first notice of the Signore claim identified in ¶ 26 above.  As of the date that this Complaint was filed, Burke has not given General Casualty notice of the amended complaints filed in the other eleven Underlying Suits filed against it in late 2014 in early 2015 identified in ¶ 26 above, or provided General Casualty with copies of those amended complaints.

**COUNT I**
**DECLARATORY JUDGMENT**

55.     General Casualty hereby incorporates by reference and re-alleges the allegations in ¶¶ 1 - 54 as though fully set forth herein.

56.     There is a genuine and *bona fide* dispute, and an actual controversy and disagreement, between General Casualty and Burke concerning whether the General Casualty Policies cover the Underlying Suits.

57.     General Casualty seeks a declaration of the parties' respective rights and obligations under the General Casualty Policies in connection with coverage for the Underlying Suits as follows:

a)   That the General Casualty Policies do not cover the Underlying Suits because those suits do not allege a fortuitous loss;

b)   That the General Casualty Policies containing professional liability exclusions do not cover the Underlying Suits because those suits allege liability against Burke arising out of the rendering or failure to render professional services;

c)   That the doctrine of known loss precludes coverage under the General Casualty Policies for the Underlying Suits, to the extent that Burke knew of the loss before each General Casualty Policy incepted;

d)   That the General Casualty Policies do not cover the Underlying Suits because those suits do not allege that Burke is liable for injuries caused by an "occurrence," as defined in the policies and set forth in ¶¶ 32 and 37 above, because each policy applies only to damages for "bodily injury" or "property damage" caused by an "occurrence";

e)   That one or more of the General Casualty Policies do not cover the Underlying Suits because one or more of those suits do not involve "bodily injury," "property damage," "personal injury" or "advertising injury" taking place during the pertinent policy period;

f)   That the General Casualty Policies do not cover the Underlying Suits under their provisions insuring against liability for "personal injury" or "advertising

injury" because the Underlying Suits do not allege "personal injury" or "advertising injury";

g) That the General Casualty Policies do not cover the Underlying Suits as claims for "personal injury" because those suits do not allege an "offense," as the policies require;

h) That the General Casualty Policies do not cover the Underlying Suits because those suits allege injury arising out of pollution barred by the pollution exclusions in those policies;

i) That the General Casualty Policies do not cover the Underlying Suits because those suits allege bodily injury or property damage "expected or intended from the standpoint of the insured";

j) That the Longview Policies do not cover the Underlying Suits because Burke is not an insured under those policies, as Burke existed at the time those policies were issued and during their respective policy periods;

k) That the Umbrella Policies do not cover the Underlying Suits because the limits underlying those policies have not been exhausted;

l) That the Lost Policies described in ¶¶ 43 and 45 above do not cover the Underlying Suits because Burke cannot satisfy the burden of proving the existence and contents of those policies;

m) That the General Casualty Policies do not cover the Underlying Suits to the extent that Burke has violated policy conditions relating to its duties in the event of an occurrence or claim by providing incomplete responses to General Casualty's information requests, failing to disclose material information to

General Casualty, and/or making misrepresentations or otherwise failing to cooperate with General Casualty in its investigation of the Underlying Suits;

n) That the General Casualty Policies do not cover the Underlying Suits because Burke failed to give adequate notice of Underlying Suits, failed to immediately forward copies of all relevant papers it received to General Casualty, made misrepresentations concerning matters related to the Underlying Suits, and/or otherwise failed to comply with policy conditions relating to its duties in the event of an occurrence or claim; and

o) That the General Casualty Policies are all excess policies because of the professional liability policy that Essex Insurance Company issued to Burke; because Essex accepted Burke's defense in the Underlying Suits without reserving any rights against General Casualty; and/or because of any other insurance available to Burke other than insurance provided by the General Casualty Policies.

58. There may be other reasons why there is no coverage based on the terms of the policy or applicable law. General Casualty reserves all rights with respect to all policy defenses and legal defenses, and reserves all rights to amend this Complaint in order to add additional defenses to coverage as they become apparent.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs General Casualty Company of Wisconsin and General Casualty Insurance Company demand judgment against Defendants Burke Engineering Corporation and its predecessors and affiliates, and the Claimant Defendants, as follows:

(1)     Determining and declaring that the General Casualty Policies do not cover Burke for any of the causes of action in all of the Underlying Suits;

(2)     Determining and declaring that General Casualty Company of Wisconsin and General Casualty Insurance Company each has no duty to defend or pay defense costs for Burke in connection with the Underlying Suits under the General Casualty Policies;

(3)     Determining and declaring that General Casualty Company of Wisconsin and General Casualty Insurance Company each has no duty to indemnify the Burke or to pay any judgment or settlement entered in the Underlying Suits under the General Casualty Policies; and

For such other and further relief as this Court may deem just and proper.


Dated: May 11, 2015

                                        Respectfully submitted,

                                        **GENERAL CASUALTY COMPANY**
                                        **OF WISCONSIN AND GENERAL CASUALTY**
                                        **INSURANCE COMPANY**


                                        By: _____
                                                One of Their Attorneys


Jan M. Michaels
John M. Duczynski
Michaels, Schulwolf & Salerno, P.C.
300 South Wacker Drive, Suite 1650
Chicago, Illinois  60606
Telephone:  (312) 428-4720
Facsimile:   (312) 575-8679
jmichaels@msslawpc.com
jduczynski@msslawpc.com

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on <u>May 11, 2015</u>, a true and correct copy of the above and foregoing document was filed electronically. Notice of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<u>/s/ Jan M. Michaels</u>